IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DONNA MALONE**, *et al.*, | \* | |
| | \* | |
| Plaintiff, | \* | |
| | \* | |
| v. | \* | **Civil Case No. SAG-20-00446** |
| | \* | |
| **PENINSULA REGIONAL MEDICAL CENTER**, *et al.*, | \* | |
| | \* | |
| | \* | |
| Defendants. | \* | |
| | \* | |

************

## MEMORANDUM OPINION

THIS MATTER concerns a suit by Donna Malone ("Plaintiff"), brought individually and as Administrator of the Estate of her deceased son. Complaint, ECF 1. Relevant to the instant motion, Plaintiff has sued Peninsula Regional Medical Center ("PRMC"), Emergency Service Associates, P.A., and Dr. William A. Wild (collectively, "PRMC Defendants") for their alleged conduct in connection with the suicide of her son, Thomas Gosier ("Mr. Gosier"), while he was in the custody of the Wicomico County Department of Corrections.[1] The PRMC Defendants filed a Joint Motion to Dismiss or, alternatively, for Summary Judgment. ECF 13. Plaintiff filed an opposition, ECF 26, and the PRMC Defendants filed a reply, ECF 28. For the reasons explained below, the PRMC Defendants' Motion will be GRANTED, and Plaintiff's claims against the PRMC Defendants will be dismissed without prejudice.

---

[1] Plaintiff's Complaint also asserts claims against Conmed, LLC ("Conmed"). ECF 1. Conmed has answered the Complaint, ECF 11, and is not party to the pending Motion to Dismiss. A related case, *Malone v. Wicomico County,* SAG-19-2412 (D. Md.), also asserts claims against Conmed arising out of Mr. Gosier's detention at the Wicomico County Detention Center ("WCDC").

I. **FACTUAL BACKGROUND**

This case involves the tragic death of Plaintiff's son, Mr. Gosier. Mr. Gosier suffered from bipolar disorder and/or schizophrenia, and had a crippling addiction to several drugs. ECF 1 ¶ 17.[2] On August 12, 2016, he was arrested in Salisbury, Maryland, in connection with an alleged theft from a Giant grocery store of several bottles of Benzedrex nasal spray, which is commonly used to mimic the "high" achieved from abuse of amphetamines. *Id.* ¶¶ 18-22. Mr. Gosier became emotionally erratic during his arrest, purposefully slamming his head into the car window, and expressing an intent to commit suicide. *Id.* ¶ 23. As a result of Mr. Gosier's behavior, the arresting police officer executed a Petition for Emergency Evaluation under Md. Health General § 10-620 *et seq.*, and transported him to PRMC to be evaluated. *Id.* ¶ 24. The Petition reflected that in addition to his current suicidal ideations, Mr. Gosier had mentioned multiple suicide attempts in the past, and stated that he had been prescribed antipsychotic medications for his mental health disorders. *Id.* ¶ 25.

At PRMC, Mr. Gosier was assessed by a nurse, Elizabeth Townsend, and an emergency physician with Defendant Emergency Services Associates, Defendant Dr. William Wild. *Id.* ¶ 26. Dr. Wild's evaluation of Mr. Gosier lasted approximately seven minutes. *Id.* ¶ 27. Dr. Wild concluded that Mr. Gosier suffered from depression, but was not an acute suicide risk. *Id.* ¶¶ 27-28. Within thirty minutes of his arrival at PRMC, Mr. Gosier was discharged back into police custody.[3] *Id.* ¶ 30.

---

[2] The facts are derived primarily from Plaintiff's Complaint. ECF 1.

[3] In the related lawsuit, Plaintiff alleged that one of the medical providers instructed the detention center to return Mr. Gosier to PRMC if he continued to experience suicidal ideations. *See* SAG-19-2412, ECF 19 ¶ 26. That allegation is missing from the Complaint in this case.

During his ensuing nine-day detention at the Wicomico County Detention Center ("WCDC"), Mr. Gosier expressed suicidal ideations, was placed on suicide watch, and attempted suicide unsuccessfully twice. *Id.* ¶¶ 35-47.  A licensed clinical professional counselor assigned to examine Mr. Gosier determined that he should remain on suicide watch. *Id.* ¶¶ 48-53.  Nevertheless, WCDC served Mr. Gosier with notices of infraction, relating to his conduct during his two suicide attempts, and placed him in disciplinary lockdown, including solitary confinement. *Id.* ¶¶ 53, 56, 58-61.  After a hearing relating to his rules infractions, Mr. Gosier received a sentence of forty consecutive days of solitary confinement in disciplinary segregation. *Id.* ¶ 63. After Mr. Gosier requested to see a mental health professional and expressed additional suicidal ideations, he was placed back on suicide watch. *Id.* ¶¶ 64-66.  However, after twenty-four hours, WCDC placed Mr. Gosier back in segregation to continue serving his sentence. *Id.* ¶ 69.  On August 19, 2016, Mr. Gosier told a correctional officer that he felt like his life was in danger and that he needed help.  *Id.* ¶¶ 70-72.  However, he did not receive the mental health care he requested. *Id.* ¶ 73.  On August 21, 2016, nine days after his evaluation at PRMC, Mr. Gosier again attempted suicide, by hanging himself using a noose fashioned from the bedsheet in his cell. *Id.* ¶ 77.  WCDC staff who found Mr. Gosier performed CPR, and ordered an ambulance for transport to a hospital. *Id.* ¶ 78. Unfortunately, Mr. Gosier was pronounced dead the following day. *Id.* ¶ 79.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss.  *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by

a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Under Rule 12(b) of the Federal Rules of Civil Procedure, when matters outside the pleadings are submitted with a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, before a court may convert a motion to dismiss into one for summary judgment, the opposing party must be afforded reasonable opportunity to present all material made pertinent to such a motion by Rule 56. *See id.* The only material outside the pleadings submitted in this case is the copy of Mr. Gosier's medical records from PRMC. ECF 13-2. Plaintiff, in her opposition, does not address whether it is appropriate, at this stage, to convert the PRMC Defendants' motion into a motion for summary judgment. ECF 26. In fact, while not citing expressly to the medical records, Plaintiff summarizes and uses the contents of those records in her arguments that statutory

5

indemnity should not apply. ECF 26 at 7-8. Nevertheless, in the circumstances presented here, the Court declines to convert the motion into a motion for summary judgment. Instead, this Court will not consider the content of the medical records and will treat the PRMC Defendants' motion as a motion to dismiss.

## III. ANALYSIS

### A. Motion to Dismiss

The PRMC Defendants primarily contend that Plaintiffs' claims must be dismissed because they are entitled to the statutory immunity provided by Md. Code Ann., Cts. and Jud. Proc. §§ 5-623(c)(d).[4] *See generally* ECF 13-1. In Maryland, a peace officer, like the officer arresting Mr. Gosier, may petition for emergency evaluation of an individual if the officer believes, upon personal observation, that the individual has a mental disorder presenting a danger to the life and safety of the individual or others. Md. Code Ann., Health-Gen. §§ 10-622 (a) and (b)(1)(ii). That peace officer must take the individual to the nearest emergency facility for evaluation. *Id*. § 10-624(a)(1). Further, Maryland law requires that, when an emergency facility is presented with a petition for emergency evaluation, a physician must, within six hours, examine the individual to determine whether the requirements for involuntary admission are met. *Id.* § 10-624(b)(2). Following the examination, the evaluee must be released unless (1) the evaluee asks for voluntary admission, or (2) the following five criteria for involuntary admission are met:

    (1) The individual has a mental disorder;
    (2) The individual needs inpatient care or treatment;
    (3) The individual presents a danger to the life or safety of the individual or of others;
    (4) The individual is unable or unwilling to be admitted voluntarily; and

---

[4] The PRMC Defendants also argue that Plaintiff has not plausibly alleged that their actions constituted the proximate cause of Mr. Gosier's suicide, nine days after their emergency evaluation and following multiple intervening acts of negligence by the detention facility and other individual actors. ECF13 at 16-20. In light of this Court's ruling that Plaintiff's claim must be dismissed for failure to allege a viable claim under *Williams*, it need not reach the issue of causation at this stage.

6

>    (5) There is no available, less restrictive form of intervention that is consistent with the welfare and safety of the individual.

Health-Gen. § 10-617(a), Cts. and Jud. Proc. §§ 624(b)(2) and (3). The indemnity provision in question in this case provides that the emergency facility, and its agents or employees, who "in good faith and with reasonable grounds, acts in compliance with the provisions of Title 10, Subtitle 6, Part III of the Health-General Article is not civilly or criminally liable for that action."[5] *Id.*, Cts. and Jud. Proc. § 5-623(c) and (d).

Two Maryland cases have applied the statutory immunity in § 5-623(c) to claims that a medical facility improperly declined to impose or continue involuntary admission, which resulted in the death of the evaluee. First, in *Williams v. Peninsula Regional Medical Center,* 213 Md. App. 644 (2013), the Court of Special Appeals of Maryland considered a claim brought by family members of Charles Williams, Jr., who was killed in a confrontation with police.[6] Earlier that day, Williams's mother had brought him to PRMC for emergency evaluation, expressing concern about his "suicidal thoughts, his auditory and visual hallucinations, his belief that he was under a curse, his obsessive behavior, headaches, trouble sleeping, and generally unusual behavior." *Id.* at 648. Upon examination, Williams was "alert, verbal, and cooperative," and admitted to having suicidal thoughts. *Id.* The examining providers noticed cuts on the inside of Williams's arms, and opined that he "appear[ed] to be minimizing any problems going on with him." *Id.* at 649. Ultimately, the providers declined to involuntarily admit Williams for mental health treatment. *Id.* However,

---

[5] Title 10, Subtitle 6, Part III is the provision, in relevant part, specifying the five statutory factors required to subject an individual to involuntary admission.

[6] The *Williams* decision was affirmed by the Maryland Court of Appeals in *Williams v. Peninsula Regional Medical Center,* 440 Md. 573 (2014). Because the Court of Appeals's brief decision was limited to the legal question about whether statutory immunity extends to a decision not to involuntarily admit an evaluee, the detailed analysis by the Court of Special Appeals is more pertinent and helpful in evaluating the questions presented in this case.

they prescribed medication, advised Williams's mother to remove firearms from the residence and to return him to the hospital if the situation worsened. *Id.* Later that night, Williams broke into a house. *Id.* After the homeowner called 9-1-1, the police arrived and found Williams in the front yard brandishing a knife. *Id.* He told the officers, "somebody's going to die tonight," and then held the knife to his own throat, saying, "I want you to shoot me, I want to die." *Id.* The officers told Williams to drop the knife and surrender, but he refused and instead charged at the officers. *Id.* The officers shot him, and he died from the gunshot wounds. *Id.*

Relevant to this case, Williams's family filed a complaint alleging that the health care providers had been negligent in failing to involuntarily admit Williams for mental health treatment. *Id.* at 649-50. At the trial court level, "The circuit court granted the motion to dismiss, finding that the immunity statute applied to the health care providers' actions and that the family members had not alleged any facts to overcome the immunity." *Id.* at 650.

On appeal, the Court of Special Appeals determined that the immunity provision in the statute applies to emergency evaluations, and that the statute "provides immunity to any health care provider who conducts an evaluation for involuntary admission, acting in good faith and with reasonable grounds, whether or not that evaluation leads to an admittance or some less restrictive care." *Id.* at 656. The Court reasoned:

> Understanding the deep concern for patient rights and stringent requirements for involuntary admittance, it would lead to an absurd result if we were to interpret the immunity provision to only apply when someone is actually admitted. In one breath the statute would discourage admitting individuals before a careful evaluation, but in the next breath provide immunity only when the decision is to admit. Out of fear of liability, mental health professionals might err on the side of admittance, instead of properly exercising their discretion and following the stringent requirements before taking away someone's liberty.

*Id.* at 658 (citing *Farwell v. Un*, 902 F.2d 282, 289 (4th Cir. 1990) ("State law, based upon a deliberate balancing of the interests at stake, compels physicians in this context to defer to their

patients' privacy and dignitary interests in ways that obviously may run counter to the physician's professional judgment about a patient's 'best interests' and indeed may involve a known degree of risk to the patient's well-being.")).

The *Williams* Court then considered the family's argument "that even if the immunity statute applies, the standard of acting in 'good faith' and 'with reasonable grounds' is functionally equivalent to the standard for negligence." *Williams,* 213 Md. App. at 660-61. The Court agreed with the circuit court's conclusion that the legislature could not have intended to equate "good faith/reasonable grounds" with negligence, because it would "vitiate the concept of 'immunity' by adding another step in the litigation process." *Id.* at 661. Moreover, the immunity statute would be "truly useless, because even without the statute, medical professionals cannot be liable absent negligence." *Id.* at 662. Thus, the Court of Special Appeals held, "when health care providers are acting in accordance with the involuntary admission statute and a plaintiff files suit over their decision to admit or not to admit a patient, the plaintiff must allege something more than negligence or risk dismissal for failure to state a claim." *Id.* In Williams's case, the Court found that:

> The complaint does not even allege, let alone provide facts to support the failure of the health care providers to act in good faith and with reasonable grounds. The family members never discuss a failure in the statutory process of evaluation. Instead, their primary concern is that the evaluations of Williams were simply bad judgment.

*Id.* at 664. Thus, the Court of Special Appeals affirmed the circuit court's dismissal of the plaintiff's claims. *Id.*

More recently, in the second case, *Bell v. Chance,* 460 Md. 28 (2018), the Court of Appeals of Maryland considered a claim brought by the mother of a deceased son against a psychiatrist and a mental health facility, alleging that her son's release from involuntary commitment amounted to

9

medical malpractice, as evidenced by his subsequent suicide. The son, Brandon Mackey, had been involuntarily committed at Bon Secours Hospital, following a petition certified by two doctors at another hospital. *Id.* at 35. However, a psychiatrist at Bon Secours, Dr. Bell, assessed and treated Mr. Mackey, and determined that he no longer met the statutory criteria required for involuntary admission. *Id.* Dr. Bell authorized his release, and, tragically, Mr. Mackey committed suicide the next day. *Id.*

Mr. Mackey's mother sued Dr. Bell and Bon Secours, alleging that both he and the institution were negligent by releasing her son. *Id.* The case proceeded to trial, and the jury returned a verdict in favor of the mother.[7] *Id.* The Circuit Court vacated the judgment, however, based on its understanding of the immunity statute. *Id.* at 35-36. The Court of Special Appeals reversed the Circuit Court decision. *Id.* at 36. Ultimately, the Court of Appeals held:

> [A] physician acting on behalf of the facility who determines, in good faith and with reasonable grounds, that a patient initially confined under an application for involuntary admission no longer fits the criteria of HG § 10-617, and releases that patient, acts in compliance with Part III and is immune from civil or criminal liability. The assessment of those criteria need not be correct or done well. All that is required for immunity is that the assessment be done in good faith following the process and applying the criteria in the statute.

*Id.* at 60.

Thus, under the law set forth in *Williams* and *Bell,* this Court must review the Plaintiff's Complaint to see whether it specifically alleges the PRMC Defendants' failure to follow the prescribed statutory process of evaluation. It does not. Instead, the Complaint alleges "negligence" and that the PRMC Defendants "breached the applicable standards of care in [their]

---

[7] It should be noted that, before the trial in *Bell*, the defendants sought summary judgment on the basis of statutory immunity. *Id.* at 46. Their motion was denied, because the Circuit Court concluded that immunity only applied to the "initial decision concerning admission and not decisions that are made while a patient remains admitted in the facility." *Id.* at 45-46. That legal conclusion was conclusively vitiated by the Court of Appeals's contrary ruling.

10

care and treatment of Mr. Gosier in multiple ways." ECF 1 ¶ 83. The specific breaches Plaintiff alleges are:

    a. failure to implement adequate protocols for the evaluation of patients presenting under a statutory petition for emergency evaluation of mental health;

    b. failure to implement procedures to safeguard the wellbeing of patients presenting under a statutory petition for emergency evaluation of mental health;

    c. failure to obtain a consultation from a licensed mental health profession [sic] for a patient presenting under a statutory petition for emergency evaluation of mental health;

    d. failure to consider the risk factors for suicide in a patient presenting under a statutory petition for emergency evaluation of mental health;

    e. failure to consider Mr. Gosier's history of mental illness in evaluating his risk for suicide;

    f. failure to diagnose the need for medication to treat Mr. Gosier's mental illness;

    g. discharging Mr. Gosier to a detention facility without consulting with a licensed mental health professional;

    h. failure to properly supervise its agents, servants and/or employees; and

    i. failure to otherwise provide care consistent with the required standard of care.

*Id*. In short, Plaintiff alleges that the evaluation of Mr. Gosier was not "done well," not that PRMC and its physician failed to consider the relevant five factors in their assessment. While Plaintiff attempts, in her Opposition, to suggest that her allegations amount to an assertion that PRMC's evaluation did not comply with the required statutory process, *see generally* ECF 26, her Complaint is devoid of any mention of the statutory requirements, and any facts to support the notion that those requirements were not followed. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (explaining that plaintiffs are "bound by the allegations contained in [their] complaint and cannot, through the use of motion briefs, amend the complaint.").

As the Court of Appeals explained in *Bell,* "immunity does not depend on the merits or reasonableness of a decision to admit – or to release – an individual proposed for involuntary admission, but on whether the process required by the statute was followed and whether the decision, regardless of its merits or reasonableness, was based on the statutory criteria." *Bell*¸ 460 Md. at 59. Plaintiff's Complaint, which sounds in traditional negligence by asserting, *inter alia,* that PRMC's failure to establish protocols for emergency evaluations, to consult with a mental health professional, or to prescribe medication failed to meet the standard of care, does not refer to or establish any failure to apply the five statutory criteria for involuntary admission. Thus, as stated, Plaintiff has not alleged a viable claim against the PRMC Defendants, and her claims will be dismissed without prejudice. She will be permitted thirty days to file a motion for leave to amend her Complaint, to the extent she believes she can plausibly allege that the PRMC Defendants' evaluation, regardless of its quality or merits, was not premised on the relevant statutory criteria. If Plaintiff does not timely file a motion seeking leave to amend, her claims against the PRMC Defendants will be dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the PRMC Defendants' Motion to Dismiss or for Summary Judgment, ECF 13, is granted, and the claims against the PRMC Defendants are dismissed without prejudice. A separate Order follows.

Dated:  July 13 , 2020

                                                                           /s/
                                            Stephanie A. Gallagher
                                            United States District Judge